[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 05, 2002
THOMAS K. KAHN
CLERK

_____

No. 01-12343

_____

D.C. Docket No. 91-00349-CR-SH

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

HECTOR RAMON DIAZ-CLARK,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(June 5, 2002)**

Before ANDERSON and MARCUS, Circuit Judges, and MIDDLEBROOKS*,
District Judge.

_____
        *Honorable Donald M. Middlebrooks, U.S. District Judge for the Southern District of
Florida, sitting by designation.

MIDDLEBROOKS, District Judge:

In this appeal, we are presented with the specific question of whether a district court has jurisdiction, after the expiration of the time provided by Rule 35 of the Federal Rules of Criminal Procedure and without any federal habeas corpus petition before it, to reduce a prisoner's sentence based upon its conclusion that the sentence it had originally imposed was erroneous due to a grouping error under the Sentencing Guidelines. Because we conclude that the district court did not have such jurisdiction to modify the original sentence, we reverse, vacate the amended sentence and remand with instructions to reinstate the original sentence.

## I. BACKGROUND

The somewhat complicated and lengthy history of this case is as follows. In May of 1991, a federal grand jury sitting in the Southern District of Florida indicted appellee, Hector Ramon Diaz-Clark ("Diaz-Clark") on three counts relating to a conspiracy to import cocaine into the United States. This is referred to as the "Miami Case." In June of 1994, Diaz-Clark entered into a written plea agreement with the government and pled guilty to Count I of the Miami Case indictment.

In early 1994, another federal grand jury, this one sitting in the Middle District of Florida, indicted Diaz-Clark for conspiracy to import marijuana into the United

2

States. This is referred to as the "Rule 20 Case" because the case was transferred on February 10, 1995 to the Southern District of Florida pursuant to Rule 20 of the Federal Rules of Criminal Procedure. This case was originally assigned to Judge Lenore Nesbitt, but was soon transferred to Judge Shelby Highsmith, who was handling the Miami Case. Additionally, the government's unopposed motion to transfer was also a motion to consolidate the two cases; although Judge Nesbitt granted the motion to transfer, which Judge Highsmith accepted, the motion to consolidate was never ruled upon.

In January of 1995, the district court held the first of two sentencing hearings in the Miami Case. At the beginning of this hearing, the status of the Rule 20 case was discussed; when the district judge learned that the transfer paperwork in the Rule 20 case had not been completed, he decided to proceed nonetheless with sentencing in the Miami Case. However, the sentencing was continued in order to conduct an evidentiary hearing on a contested issue surrounding Diaz-Clark's involvement in the cocaine conspiracy. Shortly thereafter, the transfer of the Rule 20 Case was completed.

Therefore, as of February 27, 1995, both cases were before a single district judge, from whom this appeal has arisen. On March 3, 1995, the district court called both the Miami Case and the Rule 20 Case, stating that sentencing would be

3

pronounced first in the Miami Case, with the court then taking up the Rule 20 case. After addressing the parties' objections to the Presentence Investigation ("PSI") that had been prepared in the Miami Case, the district court sentenced Diaz-Clark to 168 months' imprisonment, five years' supervised release, and a $50.00 assessment.[1] After the sentence had been pronounced, the court asked if there were any objections to the findings of fact or the manner in which the sentence had been imposed– Diaz-Clark made no objections.

The district court then called the Rule 20 Case. The prosecutor provided the court with a copy of a written plea agreement, with which the court in turn provided the probation officer, asking the probation officer to perform certain Sentencing Guidelines calculations. The court then placed Diaz-Clark under oath and conducted a plea colloquy. The court then accepted Diaz-Clark's guilty plea to Count I of the Rule 20 indictment. When asked about the application of the Sentencing Guidelines, the probation officer, the court, and counsel engaged in a short discussion concerning

---

[1] The guidelines in the Miami Case were calculated as follows: The base offense level was set at 38 because the offense involved at least 150 kilograms but less than 500 kilograms of cocaine. Although the Presentence Investigation Report initially recommended a four-level enhancement for role, the government subsequently agreed that the upward adjustment was not warranted. After a three-level adjustment for acceptance of responsibility, the total offense level was set at 35, with a criminal history category of I, which yielded a total guideline range of 168-210 months.

the court's reasoning behind the order in which the cases were sentenced. Diaz-Clark then waived a PSI, and the court sentenced him to 120 months' imprisonment, five years' supervised release, and a $50.00 assessment with the Rule 20 sentence to run concurrently with the Miami Case sentence. Again the court asked if there were any objections to the findings of fact or the manner in which the sentence had been imposed and again Diaz-Clark made no objections.

Diaz-Clark did not appeal the sentence that had been imposed in either the Miami Case or the Rule 20 Case. However, on April 23, 1997, he filed a petition for a writ of habeas corpus in both cases. In the Miami Case petition, Diaz-Clark argued that he was entitled to habeas relief because of: (1) the disparity between his sentence and those of his co-defendants; (2) the district court's failure properly to consider his alleged abandonment of the conspiracy; (3) the court's failure to sentence him below the guideline range; (4) a violation of *Brady v. Maryland*, 373 U.S. 83 (1963); (5) the government's failure to file a substantial assistance motion; and (6) an ineffective assistance of counsel claim, brought against one of Diaz-Clark's two trial attorneys. The petition did not raise the alleged grouping error that is central to this appeal. After the petition had been fully briefed, the magistrate judge issued a report and recommendation which the district court adopted on February 23, 2000, ordering that the petition be denied. The court then denied Diaz-Clark's motion for reconsideration.

Diaz-Clark filed a notice of appeal, and the district court subsequently denied his request for a certificate of appealability.

In the Rule 20 habeas petition, Diaz-Clark argued that the sentence should be vacated due to (1) the court's erroneous application of a ten-year mandatory minimum sentence and (2) the government's failure to file a substantial assistance motion. The government conceded that Diaz-Clark's sentence in the Rule 20 Case should not have been subject to the Level 30 ten-year mandatory minimum for 1,000 kilograms or more of marijuana, and therefore agreed that Diaz-Clark should be resentenced in that case. Accordingly, the magistrate judge entered a Report and Recommendation, which the district court then adopted on February 16, 2000, recommending that the habeas petition be granted in part, limited to the issue of resentencing due to the confusion over the mandatory-minimum issue. The resentencing hearing was scheduled for May 2, 2000.

On May 1, 2000, a probation officer advised the district court that in imposing its original sentence in the Rule 20 Case, it should have treated the indictments in that case and the Miami Case as if they were separate counts of conviction contained in the same indictment, therefore sentencing Diaz-Clark under U.S.S.G. § 5G1.2. The Commentary to this Section states in pertinent part: "This section applies to multiple counts of conviction (1) contained in the same indictment or information, or (2)

contained in different indictments or informations for which sentences are to be imposed at the same time or in a consolidated proceeding." UNITED STATES SENTENCING COMMISSION, *Guidelines Manual*, § 5G1.2, cmt. (2001). With this in mind, the probation officer recalculated the guidelines level, which resulted in an adjusted offense level of 31 and a criminal history category of I.[2] The probation officer recommended that these calculations be applied in *both* the Miami Case and the Rule 20 Case, as in the probation officer's opinion, these cases should have been grouped in the first instance.

The government filed an objection to the probation officer's recommendation, arguing that the Miami Case and Rule 20 Case were "distinct criminal episodes" involving "different co-conspirators for the importation of a different [*sic*] narcotics at a different location which was [*sic*] investigated and charged separately in two different districts . . . ." The government contended that resentencing was only

---

[2] The base offense level was determined to be 38 because the Miami Case involved 300 kilograms of cocaine. The Rule 20 Case involved more than 700 kilograms but less than 1,000 kilograms of marijuana, or the equivalent of an additional five kilograms of cocaine. Because the combined total was more than 150 but less fewer than 500 kilograms of cocaine, the base offense level remained 38, the same as that in the Miami Case alone. There was an adjustment of two levels made for the safety valve under U.S.S.G. § 2D1.1(b)(6), an adjustment of two levels for minor role as agreed in the Rule 20 Case, and a three-level adjustment for acceptance of responsibility; this yielded a total offense level of 31, with a concomitant guideline range of 108-135 months.

appropriate in the Rule 20 Case, and not in the Miami Case, because only the Rule 20 habeas petition had been partially granted.

The district court then invited the parties to brief the issue of how it could obtain jurisdiction to remedy this perceived grouping error. Because Diaz-Clark's appeal of the denial of the Miami Case's habeas corpus petition was before this Court, the district court determined that it did not have jurisdiction to attempt to correct the sentence in that case. Diaz-Clark argued that the district court could obtain jurisdiction to resentence him in the Miami Case if this Court were to issue a limited remand. The government argued in opposition that the court could not regain jurisdiction because of the following: (1) the case was on appeal; (2) there was no pending motion that would warrant the filing of a motion under *United States v. Ellsworth*, 814 F.2d 613 (11th Cir. 1987); and (3) if Diaz-Clark were to file a motion for relief from judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, so that he could raise this sentencing issue as a new basis for relief, such motion would of necessity be denied as a time-barred successive 28 U.S.C. § 2255 petition.

On May 17, 2000, the district court entered an order entitled "Certification to the Eleventh Circuit Court of Appeals," wherein the court noted what it considered to be an error in not grouping the Miami Case and the Rule 20 Case in imposing

sentence. The Certification Order requested this Court to remand the Miami Case's habeas case for the limited purpose of allowing the district court to have both cases before it so it could group them together in calculating the sentence under the Guidelines. The district court wrote that "[t]he procedural nuances of two rather arcane areas of law (the Sentencing Guidelines and post-conviction collateral litigation) have collided in this case, and left the Court unable to correct a sentencing error." On August 21, 2000, this Court entered an order carrying the district court's certification with the case. Diaz-Clark also filed a motion for a limited remand, which was also ordered to be carried with the case. Finally, on December 6, 2000, Diaz-Clark moved for voluntary dismissal of his appeal, which was granted on January 12, 2001.

Diaz-Clark's resentencing hearing was then set for March 8, 2001. At that hearing, the district court, over the objection of the government as to the court's jurisdiction to do so, proceeded to resentence Diaz-Clark for both the Rule 20 Case and the Miami Case. The adjusted guideline range was 31 with a criminal history category of I, which yielded a guideline range of 108 to 135 months' imprisonment. The district court denied Diaz-Clark's motion for downward departure based on rehabilitation, and sentenced him to concurrent sentences of 108 months' imprisonment and three years' supervised release. This resulted in a five-year

decrease from the original sentences. Diaz-Clark then reminded the court that under the Rule 20 Case's plea agreement, the maximum sentence that could be imposed in that case was 60 months' imprisonment. The court accordingly amended its final judgment to indicate that the sentence imposed in the Rule 20 Case was 60 months' imprisonment. The government noted its objection based on the court's lack of jurisdiction to resentence in the Miami Case.

The district court's position vis-à-vis resentencing Diaz-Clark in both cases, in order to reflect what it considered to be the correct application of the Sentencing Guidelines' grouping requirements, was that federal courts enjoy a species of "inherent power" to correct an illegal sentence. In reaching this conclusion, the court relied on *United States v. Cochran*, 883 F.2d 1012 (11th Cir. 1989), and *United States v. Henry*, 709 F.2d 298 (5th Cir. 1983) (en banc). The court found this power to have been "predating and independent from the adoption of the Federal Rules of Criminal Procedure." The court concluded by stating, "In short, this Court not only has the inherent power to correct an illegal sentence, it is obligated to correct an illegal sentence."

## II.  DISCUSSION

We have jurisdiction to adjudicate this appeal pursuant to 18 U.S.C. § 3742(b).

Whether the district court had jurisdiction to resentence Diaz-Clark is a legal question subject to plenary review. *See United States v. Sjeklocha*, 114 F.3d 1085, 1087 (11th Cir. 1997) ("The question whether the district court had the authority to resentence the defendant under former Fed. R. Crim. P. 35(a) and 28 U.S.C. § 2255 is a legal question subject to plenary review."); *see also United States v. Maduno*, 40 F.3d 1212, 1215 (11th Cir. 1994) ("Whether a court has jurisdiction over a particular case is a question of law subject to plenary review.").

After a thorough review of the pleadings, the record, and the briefs on appeal, we conclude that the district court erred in concluding that aside from the specific parameters set forth by the federal statutory provisions controlling sentencing, as well as the Federal Rules of Criminal Procedure, it could invoke an "inherent power" to correct what it viewed as the illegal sentence it had imposed in the Miami Case. We therefore vacate the district court's resentencing in the Miami Case and remand that case back to the district court with instructions to reinstate the original sentence.

The most germane facts are these. The sentence in the Miami Case was imposed on March 3, 1995. Diaz-Clark did not appeal this sentence, but on April 23, 1997, filed a § 2255 habeas petition. The habeas petition did not raise the grouping issue. On February 23, 2000, the district court denied this petition. Diaz-Clark appealed this denial, and then voluntarily dismissed his appeal on January 12, 2001.

On March 8, 2001, the district court resentenced Diaz-Clark in both cases. This was more than six years after the original sentence had been imposed in the Miami Case and more than one year after the Miami Case habeas petition had been denied.

The starting point for the analysis is the relevant statutory provision. Section 3582 of Title 18, United States Code, provides in pertinent part:

> The court may not modify a term of imprisonment once it has been imposed except that–
> (1) in any case–
>    . . .
>    (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure.

18 U.S.C. § 3582(c). The proviso that a court may modify a sentence when "expressly permitted by statute" refers to situations where the defendant is incarcerated pursuant to a "plainly illegal sentence." FED. R. CRIM. P. 35 advisory committee's notes. The drafters of the Federal Rules of Criminal Procedure explicitly assumed "that a defendant detained pursuant to such a sentence could seek relief under 28 U.S.C. § 2255 if the seven day period provided in Rule 35(c) has elapsed." *Id.* Here, however, Diaz-Clark failed to raise the grouping issue on direct appeal or in his original § 2255 petition. Therefore, Diaz-Clark is confronted with the AEDPA's[3] "second or

---

[3] Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-32, 110 Stat. 1214 (1996).

successive" petition limitation if he attempts to attack the sentence in the Miami Case in this manner. Under this limitation, Diaz-Clark must obtain certification by the court of appeals before a "second or successive" habeas petition may be pursued in the district court, and such certification will only be granted if the petitioner makes a showing of newly discovered evidence that establishes his or her innocence, or points to a new rule of constitutional law, recognized by the Supreme Court and made retroactively applicable to cases on collateral review. *See* 28 U.S.C. §§ 2244, 2255; *see also Castro v. United States*, ___ F.3d ___, (11th Cir. May 7, 2002) (describing strictures placed on successive habeas petitions). Neither prong is met under the facts of this case.[4]

Therefore, the district court could have modified the sentence imposed in the Miami Case only in one of two ways: (1) pursuant to Rule 35 of the Federal Rules of Criminal Procedure, or (2) pursuant to the "inherent authority" upon which the district

---

[4] Further, it is somewhat unclear whether Diaz-Clark's argument concerning misapplication of the sentencing guidelines would be proper grounds for relief under § 2255 because "nonconstitutional claims can be raised on collateral review only when the alleged error constitutes a 'fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure.' " *Burke v. United States*, 152 F.3d 1329, 1331 (11th Cir. 1998) (quoting *Reed v. Farley*, 512 U.S. 339, 348 (1994)).

court relied.[5] As the district court noted in its Certification to the Eleventh Circuit, "[n]either Rule 35 of the Federal Rules of Criminal Procedure nor 18 U.S.C. § 3583(e) [dealing with issues of supervised release] provides authority to resentence Diaz-Clark in [the Miami Case]." This was an accurate statement, and as such the district court acted outside the boundaries of its jurisdiction when it resentenced Diaz-Clark in the Miami Case.

Prior to the 1987 amendments to the Federal Rules of Criminal Procedure, Rule 35(a) stated that "[t]he court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence." However, as part of the Sentencing Reform Act of 1984, Congress amended this part of Rule 35. On November 1, 1987, the amendments took effect. Then Rule 35 was again amended in 1991. As amended, Rule 35 provides that a sentencing court may correct a sentence: (1) if directed to do so on remand from an appellate court, *see* FED. R. CRIM. P. 35(a); (2) within one year of the original sentence

---

[5] It is worth noting here, by way of general background, that "[i]t is by now axiomatic that the inferior federal courts are courts of limited jurisdiction. They are 'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress." *University of So. Ala. v. American Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)). In this regard, "a federal court is powerless to act without jurisdiction . . . ." *Id.* at 410.

if upon a substantial assistance motion filed by the government, *see id.* 35(b); or (3) most significantly for this appeal, "within seven days after the imposition of sentence, ... [to] correct a sentence that was imposed as a result of arithmetical, technical, or other clear error." *Id.* 35(c).

This Court has conclusively held that "the seven-day limitation contained in Rule 35(c) is a jurisdictional restriction," *United States v. Morrison*, 204 F.3d 1091, 1093 (11th Cir. 2000); *see also United States v. Yost*, 185 F.3d 1178, 1180 n.3 (11th Cir. 1999) ("Rule 35(c) authority is jurisdictional.") (dicta), and other Courts of Appeal have agreed. *See, e.g., United States v. Lopez*, 26 F.3d 512, 518-19 (5th Cir. 1994) (per curiam); *United States v. Fahm*, 13 F.3d 447, 453 (1st Cir. 1994); *United States v. Townsend*, 33 F.3d 1230, 1231 (10th Cir. 1994). Therefore, a court's modification of a sentence outside of this seven-day period is an action taken without the requisite jurisdiction, and is a legal nullity. *See Morrison*, 204 F.3d at 1094 (vacating district court's modified sentence imposed thirteen days after original sentence orally imposed).

Other circuit courts that have addressed the issue are in accord. *See, e.g., United States v. Austin*, 217 F.3d 595, 597 (8th Cir. 2000) ("Thus, more than seven days after the imposition of [the defendant's] sentence, the District Court had no jurisdiction to alter it, even if the sentence was legally erroneous."); *United States v.*

*Barragan-Mendoza*, 174 F.3d 1024, 1029 (9th Cir. 1999) (stating that the party seeking sentence modification "must meet the conditions of [Rule 35(c)]; otherwise, the district court *cannot* modify a defendant's sentence" and vacating sentence modified two months after original sentence imposed); *United States v. Werber*, 51 F.3d 342, 348 (2d Cir. 1995) ("Because the district court modified the defendants' original sentences more than seven days after they were imposed, the court had no jurisdiction to enter the corrected judgments under Rule 35(c)."); *Lopez*, 26 F.3d at 520 (holding that modification of original sentence "occurred outside the seven-day window and the district court lacked jurisdiction to act pursuant to Rule 35(c)"); *Fahm*, 13 F.3d at 454 ("Since the narrow window of opportunity allowed under Rule 35(c) closed long before the district court reconsidered its original sentence, and the court lacked inherent power to do so, the original sentence must be reinstated."); *United States v. Daddino*, 5 F.3d 262, 265 (7th Cir. 1993) (per curiam) (concluding that an attempt to correct a sentence two months after it was imposed "falls well outside of the limited authority provided in Rule 35(c)"). The district court did not act within Rule 35(c)'s seven-day time period in modifying Diaz-Clark's sentence in the Miami Case. Therefore, the court's decision can only be upheld if it had some "inherent authority" to modify the sentence.

The same cases previously cited with respect to Rule 35's seven-day limitation

also dispose of the issue of whether a district court has some sort of inherent authority to modify a sentence outside of Rule 35(c)'s time period. They conclude that district courts do not. *See, e.g.*, *Barragan-Mendoza*, 174 F.3d at 1028 ("[D]istrict courts do not have 'inherent authority' to reconsider sentencing orders."); *United States v. Handa*, 122 F.3d 690, 691 (9th Cir. 1997); *United States v. Mendoza*, 118 F.3d 707, 709 (10th Cir. 1997) ("A district court does not have inherent authority to modify a previously imposed sentence; it may do so only pursuant to statutory authorization."); *Fahm*, 13 F.3d at 453 ("Upon careful consideration of the rule, the advisory committee's note, and relevant case law, we conclude that the court had no inherent power to increase its original sentence."). The Supreme Court has addressed the issue of a district court's inherent power in *Carlisle v. United States*, 517 U.S. 416 (1996). *Carlisle* involved the exercise of "inherent power" in the context of a Rule 29 motion for judgment of acquittal, but the reasoning is instructive. The district court had granted the defendant's motion for judgment of acquittal that had been filed one day outside of the seven-day window allowed under Rule 29(c). The Sixth Circuit reversed, holding that the district court lacked jurisdiction to do this, and the Supreme Court affirmed. Addressing the defendant's contention that the district court had some "inherent supervisory power" to allow the motion to be filed one day late, the Court unequivocally concluded that "[w]hatever the scope of this 'inherent power,' . . . it

17

does not include the power to develop rules that circumvent or conflict with the Federal Rules of Criminal Procedure." *Id.* at 426. " '[F]ederal courts have no more discretion to disregard the Rule's mandate than they do to disregard constitutional or statutory provisions.' " *Id.* (quoting *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254-55 (1988)).

The advisory committee notes to Rule 35's 1991 amendments themselves recognized that at least two circuit courts had "held that the trial court has the inherent authority . . . to correct a sentence" within the time allowed for appeal, and that the amended Rule 35(c), with its seven-day restriction, "in effect codifies the result in those two cases but provides a more stringent time requirement." FED. R. CRIM. P. 35 advisory committee's notes.[6]

---

[6] *See also Barragan-Mendoza*, 174 F.3d at 1029:
Analyzing the 1987 amended version of Rule 35, circuits held that district courts had "inherent authority" to correct sentencing errors, despite the absence of any statute authorizing such corrections. *See United States v. Rico*, 902 F.2d 1065, 1067 (2d Cir. 1990) ("[A] district court has inherent power in certain circumstances to correct its acknowledged mistakes, even after the enactment of amended Rule 35(a)."); *United States v. Cook*, 890 F.2d 672, 675 (4th Cir. 1989) (similar). *Because of such decisions, the Committee in 1991 added subsection (c)*. The Committee expressly noted that subsection (c) was intended to codify the court's "inherent authority" to modify sentences, but with more stringent limitations. *See* Fed. R. Crim. P. 35 advisory committee's notes (West 1998) . . . .
(emphasis added).

The district court relied on *United States v. Cochran*, 883 F.2d 1012 (11th Cir. 1989), and *United States v. Henry*, 709 F.2d 298 (5th Cir. 1983) (en banc), in reaching its conclusion. However, this reliance was misplaced, mainly because these cases predate the 1991 amendments to Rule 35 discussed above.[7]

Because we conclude that the district court had no jurisdiction to resentence in the Miami Case, we need not decide the issue of whether the district court correctly applied the grouping provisions of the Sentencing Guidelines to the Miami Case and the Rule 20 Case.[8] The district court had concluded that U.S.S.G. § 5G1.2, dealing

---

[7] Diaz-Clark devotes most of his argument on appeal to the proposition that jurisdiction exists through application of the "sentencing package" doctrine. While usually applied on direct appeal, we have referred to the sentencing package doctrine in holding that a district court has jurisdiction, after vacating an 18 U.S.C. § 924(c) conviction on a challenge brought in a § 2255 petition pursuant to *Bailey v. United States*, 516 U.S. 137 (1995), to resentence a defendant on the remaining, unchallenged counts. *See United States v. Watkins*, 147 F.3d 1294 (11th Cir. 1998); *United States v. Mixon*, 115 F.3d 900 (11th Cir. 1997). Those cases hinge upon statutory construction of 28 U.S.C. § 2255 and cannot be read so broadly as to confer jurisdiction over a separate sentence imposed in a separate and unrelated case.

[8] Because we decide the case on the basis of the district court's lack of jurisdiction, we pause here only to note the incongruity of applying grouping to lower by five years the sentence imposed in the cocaine case alone, before consideration of the marijuana offense.

In explaining the rationale for grouping, the Sentencing Commission has pointed out that "[t]he difficulty is that when a defendant engages in conduct that causes several harms, each additional harm, even if it increases the extent to which

19

with the appropriate sentence to be imposed on multiple counts of conviction, applied to the cases before it because the Commentary states: "This section applies to multiple counts of conviction (1) contained in the same indictment or information, or (2) contained in different indictments or informations for which sentences are to be imposed at the same time or in a consolidated proceeding." *Id.* Regardless, the Miami Case was not properly before the district court after Diaz-Clark's habeas petition in the Rule 20 Case had been granted for the limited purpose of resentencing in order to come into compliance with the plea bargain entered into in that case.

## III.  CONCLUSION

In conclusion, under the relevant statutes and case law, the district court acted without jurisdiction when it resentenced Diaz-Clark in the Miami Case.  It acted outside of Rule 35(c)'s seven-day jurisdictional limit, without a remand from this Court and without a substantial assistance motion filed by the government.  Outside

---

punishment is warranted, does not necessarily warrant a proportionate increase in punishment." UNITED STATES SENTENCING COMMISSION, *Guidelines Manual*, Ch. 1, Pt. A, p.8 (2001).  While the "volume discount" for grouping unrelated offenses has been described as "hardly intuitive," *United States v. Hernandez Coplin*, 24 F.3d 312, 319 (1st Cir. 1994), in this case the inclusion of the marijuana offense resulted not in a discount but in a rebate.  This anomaly was created by the two-level adjustment for safety valve, which had not been enacted at the time of the original sentencing in the cocaine case, and the two-level adjustment for the minor role the defendant played in the subsequent marijuana case.

20

of Rule 35(c) there exists no "inherent authority" for a district court to modify a sentence. Therefore, the sentence is VACATED, and the case is REMANDED with instructions to the district court to reinstate the original Miami Case sentence.

VACATED AND REMANDED.